IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-00507-NYW-NRN

KELLY LANHAM, derivatively on behalf of LIGHTNING eMOTORS, INC.

    Plaintiff,

v.

DR. AVI S. KATZ,
DR. RALUCA DINU,
NEIL MIOTTO,
BRAD WEIGHTMAN,
JOHN J. MIKULSKY,
ANDREA BETTI-BERUTTO,
PETER WANG,
ROBERT FENWICK-SMITH,
BRUCE COVENTRY,
KENNETH JACK,
WANDA JACKSON-DAVIS,
TIM REESER,
THADDEUS SENKO,
DIANA TREMBLAY, and
TERESA P. COVINGTON,

    Defendants,

and

LIGHTNING eMOTORS, INC.,

    Nominal Defendant.

---

## ORDER

This matter is before the Court on the Amended Unopposed Motion for Preliminary Approval of Derivative Settlement (the "Motion" or "Motion for Preliminary Approval") [Doc. 45]. The Court has considered the Motion and the applicable case law and finds

that oral argument would not materially assist in the resolution of this matter. For the reasons set forth in this Order, the Motion for Preliminary Approval is respectfully **GRANTED**.

## BACKGROUND

The Court draws the following factual background from the Corrected Verified Shareholder Derivative Complaint (the "Amended Complaint"). [Doc. 16]. This case concerns the May 2021 merger between GigCapital3, Inc. ("GigCapital3") and Lightning Systems. See [id. at ¶¶ 5, 10, 55–60]. "Upon closing of the transaction, Lightning Systems would become a wholly-owned subsidiary of GigCapital3, [and] GigCapital3 would rename itself Lightning eMotors" ("Lightning" or the "Company"). [Id. at ¶ 59]. On March 26, 2021, GigCapital3 issued a proxy statement that made various representations concerning the merger; the parties' assets, strengths, and capabilities; and projections and goals for the future of Lightning, such as Lightning's "pipeline of $800 million of sales" and that Lightning had "already received purchase orders to completely cover its estimated 2021 and over 25% of 2022 revenue." [Id. at ¶¶ 8, 62–66]. The merger closed on May 6 and May 7, 2021. [Id. at ¶ 10].

After the close of markets on August 16, 2021, Lightning announced that it had produced only 37 vehicles in the second quarter of 2021, had generated only $10,500,000 in revenues during the first half of 2021, and had seen a net loss of $73,500,000 over the same period. [Id. at ¶¶ 14, 74]. Lightning also announced that it no longer expected to meet the projections previously provided. [Id. at ¶ 74]. After these disclosures, Lightning's stock price dropped from "a close of $9.63 per share on August 16, 2021, to a close of $8.00 per share on August 17, 2021." [Id. at ¶ 75].

2

On October 15, 2021, a securities class action against Lightning was filed in the District of Colorado. *See Tye v. Lightning eMotors, Inc.*, 21-cv-02774-RMR-KAS (D. Colo.) (the "Securities Class Action"). Meanwhile, this shareholder derivative action was initiated on February 24, 2023 by Plaintiff Kelly Lanham ("Plaintiff", a Lightning shareholder. [Doc. 1; Doc. 16 at ¶ 22]. In this case, Plaintiff alleges that the directors and officers of GigCapital3 and Lightning (the "Individual Defendants")[1] misrepresented Lightning's ability to scale up production and increase Lightning's revenues and gross margins with the infusion of capital that would result from the merger. *See, e.g.*, [Doc. 16 at ¶¶ 64–65, 82]. Plaintiff also alleges that the Individual Defendants knew, or recklessly disregarded, that Lightning could not rapidly scale up its operations or meet its forecasted revenue growth. [*Id.* at ¶¶ 67–68, 82]. In the Amended Complaint, Plaintiff asserts four causes of action: (1) a claim for violations of section 14(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.14a-9 against the Gig3 Defendants,[2] Defendant Fenwick-Smith, and Defendant Reeser; (2) breach of fiduciary duty against the Individual Defendants; (3) aiding and abetting a breach of fiduciary duty against the Individual Defendants; (4) unjust enrichment against the Individual Defendants; and (5) waste of corporate assets against the Individual Defendants. [*Id.* at ¶¶ 87–115].

---

[1] "Individual Defendants" refers to Defendants Robert Fenwick-Smith, Tim Reeser, Bruce Coventry, Kenneth Jack, Thaddeus Senko, Diana Tremblay, Teresa P. Covington, Dr. Avi S. Katz, Dr. Raluca Dinu, Neil Miotto, Brad Weightman, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang. [Doc. 16 at ¶¶ 31, 39]. The Court notes that while Wanda Jackson-Davis is named in the caption of the Amended Complaint, *see* [*id.* at 1], she is not referenced elsewhere in the pleading, *see generally* [*id.*].

[2] The "Gig3 Defendants" are Defendants Dr. Avi S. Katz, Dr. Raluca Dinu, Neil Miotto, Brad Weightman, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang. [Doc. 16 at ¶ 31].

On October 4, 2023, Plaintiff filed the instant Motion for Preliminary Approval, representing that the Parties have reached a settlement of Plaintiff's claims. [Doc. 45 at 5]. Plaintiff requests that the Court (1) approve the Parties' proposed form of notice; (2) approve the Parties' proposed method of providing notice of the settlement to current stockholders of Lightning; and (3) set a hearing to determine if the Parties' settlement is fair, reasonable, and adequate. [*Id.* at 19].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23.1, a derivative action may be settled only with the Court's approval. Fed. R. Civ. P. 23.1(c). The Court applies the same procedure for approving settlements in derivative actions as it does to approving settlements in class actions. *See* Wright & Miller et al., 7C Federal Practice & Procedure § 1839 (3d ed. April 2023 update). Accordingly, courts considering settlements of derivative actions have looked to cases involving class action settlements under Rule 23(e) for guidance. *See Lloyd v. Gupta*, No. 3:15-cv-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016).

"In assessing whether to approve a derivative action settlement, courts may consider whether the settlement was 'fair, reasonable, and adequate.'" *Id.* (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). This requires the Court to consider "whether the settlement is the result of arm's-length negotiations in which [the] plaintiff['s] counsel has effectively represented the interests of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation." *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (quotation and citation

4

omitted). At the preliminary stage, the Court need only determine whether the settlement and its terms are "within the range of possible approval." *In re NVIDIA Corp. Derivative Litig.*, No. 4:06-cv-06110-SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quotation omitted). District courts have "wide discretion in evaluating the settlement of derivative actions under Rule 23.1." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 488 (6th Cir. 2001).

In addition, under Rule 23.1, shareholders must be given notice of a proposed derivative settlement "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice requirement ensures that "dismissal of the derivative suit is in the best interests of the corporation and the absent stockholders." *Papilsky v. Berndt*, 466 F.2d 251, 258 (2d Cir. 1972); *see also Ball v. Field*, No. 1:90-cv-04383, 1992 WL 57187, at *7 (N.D. Ill. Mar. 19, 1992) ("Notice and court approval are required by Rule 23.1 because the settlement or dismissal of a derivative action will be accorded res judicata effect if another shareholder . . . should attempt to bring a similar derivative action on behalf of the same entity, asserting the same claim."). In determining the appropriate method of notice, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky v. Armacost*, No. 3:12-cv-01597-JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014).

## ANALYSIS

### I.     Procedural Considerations

The Court must first consider whether Plaintiff's counsel "has effectively represented the interests of the shareholder class" and whether the proposed settlement is the result of arm's-length negotiations between counsel. *In re Pfizer*, 780 F. Supp. 2d

5

at 340.  "[T]hese are 'matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"  *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST, 2019 WL 13020734, at *4 (N.D. Cal. May 14, 2019) (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B), advisory committee's note to 2018 amendment).

Plaintiff asserts that the proposed settlement is the result of "hard-fought adversarial negotiations over several months by well-informed, experienced counsel." [Doc. 45 at 10–11].  Timothy MacFall ("Mr. MacFall"), one of Plaintiff's attorneys, represents that the Parties commenced settlement negotiations in April 2023 and reached an agreement in principle in August 2023.  [Doc. 45-1 at ¶¶ 21–22].  He asserts that the proposed settlement "is the product of substantial effort, advocacy, and arm's-length negotiations conducted by skilled and experienced [lawyers], achieved over the course of several months."  [*Id.* at ¶ 25].  Mr. MacFall has submitted a "Firm Résumé" with respect to his law firm that briefly details his experience in securities litigation.  *See* [Doc. 45-3 at 17–18].

Plaintiff states that negotiations followed, and were informed by, a March 2023 mediation in a related action, *Uvaydov v. Fenwick-Smith*, C.A. No. 2023-0137 (Del. Ch.), [Doc. 45 at 5, 11], which "assert[s] claims derivatively on behalf of Lightning," [Doc. 45-1 at ¶ 18].  Mr. MacFall's declaration states that the parties in the *Uvaydov* action engaged in some amount of discovery, *see* [*id.* at ¶ 17], and Plaintiff suggests that the fact that counsel for the plaintiff in the *Uvaydov* action received and reviewed this discovery "ensured that Plaintiff['s] Counsel were not only aware of the strengths and weaknesses of their claims, but they were well positioned to negotiate targeted governance reforms to

6

prevent recurrence of the wrongdoing alleged in [this case and the *Uvaydov* action],'' [Doc. 45 at 11–12]. While Plaintiff's explanation as to how she and her attorneys used the *Uvaydov* discovery in the settlement of this action is somewhat unclear, the Court does find it relevant that some discovery apparently occurred prior to, and was relevant to the substance of, the negotiations leading to the proposed settlement. *See, e.g.*, *In re CPI Aerostructures S'holder Derivative Litig.*, No. 1:20-cv-02092-ENV-CLP, 2023 WL 2969279, at *4 (E.D.N.Y. Feb. 14, 2023) ("If the parties engaged in discovery prior to negotiations, that would suggest the negotiations were legitimate and representation was effective."); *In re AOL Time Warner S'holder Derivative Litig.*, No. 1:02-cv-06302-SWK, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) ("The negotiation phase followed significant discovery, which bolstered the parties' assessment of the strengths and weaknesses of their positions and informed their negotiation strategies.").

Mr. MacFall also states that, after an agreement in principle was reached on the substantive terms of the settlement, the Parties then negotiated the attorney fees to be paid to Plaintiff's counsel. [Doc. 45-1 at ¶ 24]. Mr. MacFall states that "[i]n view of the substantial benefits achieved for the Company," the attorney fee to be paid to Plaintiff's counsel "is fair and reasonable." [*Id.*].[3]

---

[3] The Court notes that the Motion does not request that the Court approve the Parties' proposed fee award and the Court thus reserves approval of the fee award for the final approval stage. The Parties are **ADVISED** that any forthcoming request for attorney fees must comply with the requirements of Local Rule 54.3. In addition, the Court observes that courts in this district have used a lodestar approach when calculating the appropriate attorney fee in derivative action settlements, *see, e.g.*, *Make A Difference Found., Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 WL 917283, at *3 (D. Colo. Mar. 19, 2012), while other courts have used a percentage-based approach and crosscheck the requested amount against the lodestar amount, *see, e.g.*, *In re Wells Fargo & Co.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Any

7

While the Court "does not grant undue weight to the recommendation of the parties' counsel, the fact they are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks" does weigh "in favor of finding the settlement procedurally robust and the product of arm's length negotiations." *Moore v. Verb Tech. Co., Inc.*, No. 2:19-cv-08393-GW-MAA, 2021 WL 11732976, at *6 (C.D. Cal. Mar. 1, 2021). "[T]he Court is not to substitute its judgment for that of the parties, nor is it to reopen and enter into negotiations with the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996) (quotation omitted). And because this case is at the preliminary approval stage, and the Court has not yet heard any objections from other Lightning shareholders, the Court is not presently aware of any information that would suggest that Plaintiff's counsel did not effectively represent the shareholder class. The Court finds, at this preliminary stage, that the proposed settlement is procedurally fair, reasonable, and adequate.

## II.     Substantive Considerations

The Court must also determine whether the proposed settlement agreement is substantively fair, reasonable, and adequate. The proposed agreement provides that the Gig3 Defendants will pay, or cause their insurers to pay, $1,850,000 into an escrow account on behalf of Lightning, and that those funds shall be used only for the defense or settlement of the Securities Class Action. [Doc. 45-2 at ¶ 15].[4] In addition, the proposed

---

forthcoming request for attorney fees should explain to the Court which approach is appropriate for this case.

[4] In an abundance of caution, the Court advises the Parties that this Court could not, and does not, make any rulings with respect to the Securities Class Action. The claims and

8

settlement agreement contains corporate governance reforms.  *See* [*id.* at 33, § 1(a)–(g)]. Among other things, these provisions state that the Company's Board of Directors (the "Board") must prospectively review any financial guidance or operational information prior to public disclosure and must promptly issue a corrective statement or disclosure if it becomes aware of information or events that materially affect or alter any previously issued financial guidance or operational information.  [*Id.* at § 1(a)–(c)].  In addition, the Company's Chief Financial Officer will provide a written report about the Company's financial conditions and prospects to the Board at each regularly scheduled Board meeting.  [*Id.* at 34, § 4].  Furthermore, a new management committee will be created to ensure that the Company's public statements are reviewed "for accuracy, integrity, and compliance with applicable laws and regulations."  [*Id.* at § 2].  The Company will also adopt a written whistleblower policy that encourages the reporting of ethical or legal violations.  [*Id.* at § 5].

> In the context of shareholder derivative litigation,
>
> several of the [Rule 23] factors . . . inform the Court's evaluation of whether a settlement is fair, reasonable, and adequate:  (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement.

*In re AOL*, 2006 WL 2572114, at *3.  "The court is 'primarily concerned with "the strength of the case for plaintiff[] on the merits balanced against the amount offered in

---

issues in that case, including the approval of any potential settlement of that case, are solely before the Honorable Regina M. Rodriguez.

settlement."'"  *Lloyd*, 2016 WL 3951652, at *6 (quoting *In re AOL*, 2006 WL 2572114, at *3).

Plaintiff represents that the corporate governance reforms contemplated in the proposed settlement agreement "specifically address, remediate, and deter the wrongdoing alleged in" this case and in the *Uvaydov* action.  [Doc. 45 at 13].  She argues that the proposed reforms "will help bring Lightning's internal procedures into compliance with best practices, provide increased value to the Company, significantly enhance long-term shareholder value, and protect the Company and its shareholders from a repeat of the recent damaging events."  [*Id.* at 14].  She also explains that, while she believes that this case has merit, "there exist significant risks in continuing to prosecute any shareholder derivative action," and "[c]ontinued litigation would . . . be extremely complex, costly, and of substantial duration."  [*Id.* at 15–16].

The Court agrees with Plaintiff at this preliminary stage.  "Reforms addressing the issues giving rise to the derivative suit 'are exactly the type that courts deem to confer a substantial benefit on the company.'"  *Scott v. Wei*, 1:15-cv-09691-AJN, 2018 WL 2254541, at *4 (S.D.N.Y. May 17, 2018) (quoting *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281 (S.D.N.Y. 2015)).  And "[t]he doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs."  *In re Fab*, 148 F. Supp. 3d at 281–82.  This case has not undergone any substantive motions practice, which makes it "even less clear that Plaintiff[] will be meritorious in establishing liability than in other instances where settlement is reached after extensive adversarial proceedings."  *Id.* at 282.  To ultimately

establish liability, as Plaintiff explains, Plaintiff would need to complete discovery, take depositions, designate experts, engage in summary-judgment motions practice, and complete a trial. [Doc. 45 at 16]. "By contrast, the [proposed s]ettlement assures immediate corporate reforms." *In re Fab*, 148 F. Supp. 3d at 282. And finally, given that this case is still in the preliminary approval stage, there have been no shareholder objections to the proposed settlement agreement, rendering the fourth factor irrelevant. *See In re CPI Aerostructures*, 2023 WL 2969279, at *9. For all of these reasons, the Court concludes that, at the preliminary stage, the proposed settlement agreement is fair, reasonable, and adequate.

### III.  The Proposed Notice

Finally, the Court must determine whether the Parties' proposed methods of notifying all shareholders of the proposed settlement is sufficient to reach the majority of stockholders. *See Bushansky*, 2014 WL 2905143, at *6; Fed. R. Civ. P. 23.1(c). Plaintiff represents that the Parties propose that Lightning shareholders be informed of the proposed settlement by, for at least 30 days prior to the anticipated fairness hearing before the Court, (1) Lightning providing access to the proposed Long-Form Notice, [Doc. 45-2 at 41–49], by posting a statement or heading on the investor homepage of the Lightning website identifying the settlement, with a hyperlink that brings users directly to a web page containing the Long-Form Notice, which shall be maintained until after the Court finally approves the proposed settlement; and (2) Lightning publishing the proposed Short-Form Notice, [*id.* at 50–51], in *PR Newswire*, [Doc. 45 at 17–18]. Plaintiff asserts that this proposed notice satisfies the requirements of due process because the notice "will fairly and reasonably apprise current Lightning shareholders of the essential terms

11

of the [proposed s]ettlement and afford them an opportunity to present any objections thereto." [*Id.* at 18].

"The essence of procedural due process is that the parties be given notice and opportunity for a hearing." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984). "Both the right to be heard from and the right to be told why are integral elements of this notion of due process." *Id.*

The Long-Form Notice informs shareholders of the general terms of the proposed settlement agreement; the proposed attorney fee to be awarded in this case; the reasons for the settlement; the date and time of the final fairness hearing; the shareholders' right to attend the settlement hearing; the shareholders' right to object to the proposed settlement; the proper method for lodging objections; and how to obtain additional information. [Doc. 45-2 at 41–49]. The Court finds that the content of the Long-Form Notice properly apprises shareholders of the substantive aspects of the proposed settlement and their rights with respect to being heard and objecting to the proposed settlement. *See In re CPI Aerostructures*, 2023 WL 2969279, at *11 (approving notice with similar contents).

As to the proposed method of notice, Plaintiff does not meaningfully explain why the proposed forms of notice will fairly notify the majority of current shareholders of the proposed settlement. *See generally* [Doc. 45 at 17–18]. Indeed, Plaintiff does not inform the Court how many shareholders Lightning has, provide any information about Lightning's investor homepage or how much traffic this investor homepage sees, or otherwise explain why one publication in *PR Newswire* and a notice on the investor homepage (neither of which involves affirmative, direct notice to Lightning shareholders)

are sufficient to give notice to the "majority of interested stockholders." *Bushansky*, 2014 WL 2905143, at *6. Furthermore, based on the Court's review of applicable and analogous authority, the Court finds that courts generally require slightly more substantial methods of notice than the two limited methods proposed by the Parties here. Accordingly, the Court will **ORDER** that, in addition to posting the Long-Form Notice on the Company's investor homepage and publishing the Short-Form Notice in *PR Newswire*, the Parties shall also ensure that Lightning files a copy of the Long-Form Notice with the Securities and Exchange Commission via a Form 8-K. *See, e.g.*, *In re Wells Fargo*, 2019 WL 13020734, at *9 (approving similar procedures); *In re CPI Aerostructures*, 2023 WL 2969279, at *11 (same); *Feuer v. Thompson*, No. 4:10-cv-00279-YGR, 2012 WL 6652597, at *2–3 (N.D. Cal. Dec. 13, 2012) (same); *see also In re HQ Sustainable Mar. Indus., Inc., Derivative Litig.*, No. 2:11-cv-00910-RSL, 2013 WL 3191867, at *2 n.1 (W.D. Wash. June 20, 2013) (granting preliminary approval but requiring more notice than the parties proposed).[5] The Parties are also **ADVISED** that, in any forthcoming motion for final approval of the derivative settlement, the Parties should be prepared to inform the Court, if possible, of any pertinent information they possess concerning the number of shareholders who received notice of the proposed settlement. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 517–18 (N.D. Cal. 2020) (noting that the notice documents had been viewed 9,200 times

---

[5] If the Parties believe that filing a Form 8-K with the SEC pursuant to the Court's below deadline is not possible, it is **ORDERED** that, within **seven days** of this Order, the Parties shall jointly propose an alternative additional method of proposed notice that will help ensure that notice will reach the majority of shareholders.

and that a dedicated website for the settlement received 403 unique views), *aff'd*, 845 F. App'x 563 (9th Cir. 2021).

Furthermore, Plaintiff proposes that notice be given to shareholders at least 30 days prior to the final fairness hearing, but that objections be due 14 days prior to the fairness hearing. *See* [Doc. 45 at 18–19]. Given the substantive and procedural requirements of any objections filed with the Court, *see* [Doc. 45-2 at 47–48], the Court cannot conclude that two weeks is a sufficient period of time for shareholders to adequately consider the terms of the proposed settlement, prepare any objections, and submit those objections to the Court. Accordingly, to afford shareholders an adequate and fair opportunity to object to the proposed settlement agreement, the Court sets forth appropriate deadlines below.

For the reasons set forth in this Order, the Motion for Preliminary Approval is **GRANTED**, subject to the Court's additional required method of notice to the shareholders.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)  The Amended Unopposed Motion for Preliminary Approval of Derivative Settlement [Doc. 45] is **GRANTED**;

(2)  A fairness hearing is **SET** for **March 8, 2024** at **10:00 AM** in Courtroom A-502 before Judge Nina Y. Wang;[6]

---

[6] If this date does not work for the Parties, it is **ORDERED** that the Parties shall file a motion to reset the fairness hearing on or before **December 29, 2023**. And such motion shall include mutually agreeable dates that work for all Parties.

14

(3) Lightning shall provide notice of the proposed settlement agreement to shareholders by (1) posting a hyperlink to the Long-Form Notice on the investor homepage of the Company's website; (2) publishing the Short-Form Notice in *PR Newswire*; and (3) filing the Long-Form Notice as a Form 8-K with the SEC on or before **January 12, 2024**;

(4) The Parties shall file proof of compliance with the notice requirement on or before **January 19, 2024**;

(5) The Parties shall file their anticipated motion for final approval of the settlement and any request for attorney fees on or before **February 16, 2024**;[7]

(6) Any objections to the proposed settlement agreement must be filed on or before **February 23, 2024**; and

(7) Any reply papers in support of final approval, if any, must be filed on or before **March 1, 2024**.

DATED:  December 6, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[7] The Court notes that, in the Parties' Proposed Scheduling Order, the Parties suggest that the Court's Order should state that the fairness hearing will be held to, inter alia, "rule on Plaintiff['s] application for an award of attorneys' fees and expenses, as well as the application for service awards to Plaintiff and the plaintiff in the [*Uvaydov* action], to be paid from the attorneys' fees awarded to Plaintiff's counsel." [Doc. 45-2 at 37]. The Court questions whether it has any authority to approve a service award to someone who is not a party to this case. The Parties should be prepared to discuss, in their anticipated forthcoming motion for final approval and at the fairness hearing, this Court's authority with respect to the *Uvaydov* plaintiff, and shall otherwise delineate <u>in their motion</u> *each* of their specific requests for relief, each of which must be supported with citations to legal authority.