IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-00507-NYW-NRN

KELLY LANHAM, derivatively on behalf of LIGHTNING eMOTORS, INC.

    Plaintiff,

v.

DR. AVI S. KATZ,
DR. RALUCA DINU,
NEIL MIOTTO,
BRAD WEIGHTMAN,
JOHN J. MIKULSKY,
ANDREA BETTI-BERUTTO,
PETER WANG,
ROBERT FENWICK-SMITH,
BRUCE COVENTRY,
KENNETH JACK,
WANDA JACKSON-DAVIS,
TIM REESER,
THADDEUS SENKO,
DIANA TREMBLAY, and
TERESA P. COVINGTON,

    Defendants,

and

LIGHTNING eMOTORS, INC.,

    Nominal Defendant.

---

## ORDER GRANTING FINAL APPROVAL OF DERIVATIVE SETTLEMENT

This matter is before the Court on Plaintiff's Unopposed Motion for Final Approval of Derivative Settlement (the "Motion for Final Approval"), [Doc. 54], and the Motion for the Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (the

"Motion for Attorney's Fees")], [Doc. 55]. This Court has reviewed the Motions and the entire case file and held a final fairness hearing on March 8, 2024. [Doc. 57]. For the following reasons, the Motion for Final Approval and the Motion for Attorney's Fees are **GRANTED**.

## BACKGROUND

The Court draws the following factual background from the Corrected Verified Shareholder Derivative Complaint (the "Amended Complaint"). [Doc. 16]. This case concerns the May 2021 merger between GigCapital3, Inc. ("GigCapital3") and Lightning Systems. See [id. at ¶¶ 5, 10, 55–60]. "Upon closing of the transaction, Lightning Systems would become a wholly-owned subsidiary of GigCapital3, [and] GigCapital3 would rename itself Lightning eMotors" ("Lightning" or the "Company"). [Id. at ¶ 59]. On March 26, 2021, GigCapital3 issued a proxy statement that made various representations concerning the merger; the parties' assets, strengths, and capabilities; and projections and goals for the future of Lightning, such as Lightning's "pipeline of $800 million of sales" and that Lightning had "already received purchase orders to completely cover its estimated 2021 and over 25% of 2022 revenue." [Id. at ¶¶ 8, 62–66]. The merger closed on May 6 and May 7, 2021. [Id. at ¶ 10].

After the close of markets on August 16, 2021, Lightning announced that it had produced only 37 vehicles in the second quarter of 2021, had generated only $10,500,000 in revenues during the first half of 2021, and had seen a net loss of $73,500,000 over the same period. [Id. at ¶¶ 14, 74]. Lightning also announced that it no longer expected to meet the projections previously provided. [Id. at ¶ 74]. After these disclosures,

Lightning's stock price dropped from "a close of $9.63 per share on August 16, 2021, to a close of $8.00 per share on August 17, 2021." [*Id.* at ¶ 75].

There are a number of separate cases related to the underlying facts of this case. On October 15, 2021, a securities class action against Lightning was filed in the District of Colorado. *See Shafer v. Lightning eMotors, Inc.*, 21-cv-02774-RMR-KAS (D. Colo.) (the "Securities Class Action"). In February 2023, a derivative action was filed on behalf of Lightning in the Delaware Court of Chancery. *See* [Doc. 54 at 4–5]; see also *Uvaydov v. Fenwick-Smith*, C.A. No. 2023-0137 (Del. Ch.) (the "*Uvaydov* action"). And in August 2023, another derivative action was filed in this District: *Bhavsar v. Reeser*, No. 23-cv-02217-MEH (D. Colo.) (the "*Bhavsar* action").

Meanwhile, this shareholder derivative action was initiated on February 24, 2023 by Plaintiff Kelly Lanham ("Plaintiff" or "Ms. Lanham"), a Lightning shareholder. [Doc. 1; Doc. 16 at ¶ 22]. In this case, Plaintiff alleges that the directors and officers of GigCapital3 and Lightning (the "Individual Defendants")[1] misrepresented Lightning's ability to scale up production and increase Lightning's revenues and gross margins with the infusion of capital that would result from the merger. *See, e.g.*, [Doc. 16 at ¶¶ 64–65, 82]. Plaintiff also alleges that the Individual Defendants knew, or recklessly disregarded, that Lightning could not rapidly scale up its operations or meet its forecasted revenue growth. [*Id.* at ¶¶ 67–68, 82]. In the Amended Complaint, Plaintiff asserts four causes of action: (1) a

---

[1] "Individual Defendants" refers to Defendants Robert Fenwick-Smith, Tim Reeser, Bruce Coventry, Kenneth Jack, Thaddeus Senko, Diana Tremblay, Teresa P. Covington, Dr. Avi S. Katz, Dr. Raluca Dinu, Neil Miotto, Brad Weightman, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang. [Doc. 16 at ¶¶ 31, 39]. The Court notes that while Wanda Jackson-Davis is named in the caption of the Amended Complaint, *see* [*id.* at 1], she is not referenced elsewhere in the pleading, *see generally* [*id.*].

3

claim for violations of section 14(a) of the Securities Exchange Act of 1934 and 17 C.F.R. § 240.14a-9 against the Gig3 Defendants,[2] Defendant Fenwick-Smith, and Defendant Reeser; (2) breach of fiduciary duty against the Individual Defendants; (3) aiding and abetting a breach of fiduciary duty against the Individual Defendants; (4) unjust enrichment against the Individual Defendants; and (5) waste of corporate assets against the Individual Defendants.  [*Id.* at ¶¶ 87–115].

On December 6, 2023, this Court granted Plaintiff's Motion for Preliminary Approval of Derivative Settlement and preliminarily approved the Parties' derivative settlement, approved the Parties' proposed method of notice, with a minor modification from the Court.  [Doc. 49 at 14–15].  The Motion for Preliminary Approval represented that the Parties' settlement resolved both this case and the *Uvaydov* action, but did not mention the *Bhavsar* action.  [Doc. 45 at 5].  On February 16, 2024, Plaintiff filed the instant Motion for Final Approval, which states that the Parties' settlement now includes a resolution of the *Bhavsar* action.  [Doc. 54 at 2].  The Court held a final fairness hearing on March 8, 2024, at which time Plaintiff made an additional oral motion to award the *Bhavsar* plaintiff a $1,500 service award as part of the Parties' settlement.  [Doc. 58 at 11:9–11].  The Court considers Plaintiff's various requests below.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 23.1, a derivative action may be settled only with the Court's approval.  Fed. R. Civ. P. 23.1(c).  The Court applies the same procedure for approving settlements in derivative actions as it does to approving settlements in class

---

[2] The "Gig3 Defendants" are Defendants Dr. Avi S. Katz, Dr. Raluca Dinu, Neil Miotto, Brad Weightman, John J. Mikulsky, Andrea Betti-Berutto, and Peter Wang.  [Doc. 16 at ¶ 31].

4

actions.  *See* Wright & Miller et al., 7C Federal Practice & Procedure § 1839 (3d ed. April 2023 update).  Accordingly, courts considering settlements of derivative actions have looked to cases involving class action settlements under Rule 23(e) for guidance.  *See Lloyd v. Gupta*, No. 3:15-cv-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016).

"In assessing whether to approve a derivative action settlement, courts may consider whether the settlement was 'fair, reasonable, and adequate.'" *Id.* (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  This requires the Court to consider "whether the settlement is the result of arm's-length negotiations in which [the] plaintiff['s] counsel has effectively represented the interests of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation."  *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011) (quotation and citation omitted).  At the preliminary stage, the Court need only determine whether the settlement and its terms are "within the range of possible approval."  *In re NVIDIA Corp. Derivative Litig.*, No. 4:06-cv-06110-SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quotation omitted).  District courts have "wide discretion in evaluating the settlement of derivative actions under Rule 23.1."  *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 488 (6th Cir. 2001).

## ANALYSIS

I.      **Motion for Final Approval**

The Court first considers whether Plaintiffs' counsel[3] "has effectively represented the interests of the shareholder class" and whether the proposed settlement is the result of arm's-length negotiations between counsel. *In re Pfizer*, 780 F. Supp. 2d at 340. Plaintiff asserts that the proposed settlement is the result of "hard-fought adversarial negotiations over several months by well-informed, experienced counsel." [Doc. 45 at 9]. Timothy MacFall ("Mr. MacFall"), one of the attorneys in this case, represents that the Parties commenced settlement negotiations in April 2023 and reached an agreement in principle in August 2023. [Doc. 54-1 at ¶¶ 22–24]. He asserts that the proposed settlement "is the product of substantial effort, advocacy, and arm's-length negotiations conducted by skilled and experienced [lawyers], achieved over the course of several months." [*Id.* at ¶ 33]. The Court also notes that notice was disseminated to shareholders, *see* [Doc. 53], and no shareholder filed objections.

While the Court "does not grant undue weight to the recommendation of the parties' counsel, the fact they are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks" does weigh "in favor of finding the settlement procedurally robust and the product of arm's length negotiations." *Moore v. Verb Tech. Co., Inc.*, No. 2:19-cv-08393-GW-MAA, 2021 WL 11732976, at *6 (C.D. Cal. Mar. 1, 2021). "[T]he Court is not to substitute its judgment for that of the parties, nor is it to reopen and enter into negotiations with the parties, nor is it to turn consideration of

---

[3] References to "Plaintiffs' counsel" in the plural include counsel for Ms. Lanham and counsel for the *Uvaydov* plaintiff. *See* [Doc. 54 at 5].

the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996) (quotation omitted); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 457 (5th Cir. 1983) (considering the "intelligent evaluation of the lawsuit by the parties and their capable counsel"). The Court thus finds that the settlement was negotiated at arm's length and arrived at in good faith, and there is no evidence of fraud or collusion between the Parties.

The Court also concludes that the terms of the settlement are fair, reasonable, and adequate, considering the claims at issue in this case. The Parties' Settlement Agreement provides that the Gig3 Defendants will pay, or cause their insurers to pay, $1,850,000 into an escrow account on behalf of Lightning, and that those funds shall be used only for the defense or settlement of the Securities Class Action. [Doc. 45-2 at ¶ 15]. In addition, the proposed settlement agreement contains corporate governance reforms. *See* [*id.* at 33 § 1(a)–(g)]. Among other things, these provisions state that the Company's Board of Directors (the "Board") must prospectively review any financial guidance or operational information prior to public disclosure and must promptly issue a corrective statement or disclosure if it becomes aware of information or events that materially affect or alter any previously issued financial guidance or operational information. [*Id.* at 33 § 1(a)–(c)]. In addition, the Company's Chief Financial Officer will provide a written report about the Company's financial conditions and prospects to the Board at each regularly scheduled Board meeting. [*Id.* at 34 § 4]. Furthermore, a new management committee will be created to ensure that the Company's public statements are reviewed "for accuracy, integrity, and compliance with applicable laws and regulations." [*Id.* at 34 § 2].

The Company will also adopt a written whistleblower policy that encourages the reporting of ethical or legal violations. [*Id.* at 34 § 5].

In the context of shareholder derivative litigation,

> several of the [Rule 23] factors . . . inform the Court's evaluation of whether a settlement is fair, reasonable, and adequate: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement.

*In re AOL Time Warner S'holder Derivative Litig.*, No. 1:02-cv-06302-SWK, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006). "The court is 'primarily concerned with "the strength of the case for plaintiff[] on the merits balanced against the amount offered in settlement."'" *Lloyd*, 2016 WL 3951652, at *6 (quoting *In re AOL*, 2006 WL 2572114, at *3). In addition, "[r]eforms addressing the issues giving rise to the derivative suit 'are exactly the type that courts deem to confer a substantial benefit on the company.'" *Scott v. Wei*, 1:15-cv-09691-AJN, 2018 WL 2254541, at *4 (S.D.N.Y. May 17, 2018) (quoting *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281 (S.D.N.Y. 2015)).

Plaintiff represents that the corporate governance reforms contemplated in the Parties' proposed settlement agreement "specifically address, remediate, and deter the wrongdoing alleged in" this case and in the *Uvaydov* action. [Doc. 54 at 13]. She argues that the proposed reforms "will help bring Lightning's internal procedures into compliance with best practices, provide increased value to the Company, significantly enhance long-term shareholder value, and protect the Company and its shareholders from a repeat of the recent damaging events." [*Id.* at 14]. She also explains that, while she believes that this case has merit, "there exist significant risks in continuing to prosecute any

shareholder derivative action," and "[c]ontinued litigation would . . . be extremely complex, costly, and of substantial duration."  [*Id.* at 11–12].

The Court agrees that the derivative settlement is fair, reasonable, and adequate. First, the settlement addresses the issues giving rise to this lawsuit. *Scott*, 2018 WL 2254541, at *4; *see also In re Davita Healthcare Partners, Inc.*, No. 12-cv-02074-WJM-CBS, 2015 WL 3582265, at *3 (D. Colo. June 5, 2015) ("[T]he corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action."). Further, Plaintiff faced significant uncertainty if she continued to pursue this litigation. Indeed, as Plaintiff pointed out at the final fairness hearing, [Doc. 58 at 4:9–5:6], in the Securities Class Action, the Honorable Regina M. Rodriguez recently dismissed the plaintiffs' claims without prejudice for failure to state a claim, *see Shafer*, 21-cv-02774-RMR-KAS (D. Colo.), ECF No. 118.  Plaintiff represented at the hearing that the statements at issue in the Securities Class Action are, "to a very large degree, . . . the predicate of [P]laintiff's breach of fiduciary duty claims" in this case.  [Doc. 58 at 5:2–4]. Furthermore, shareholder derivative litigation as a whole "is notoriously difficult and unpredictable," making settlement of these cases "particularly favored."  *Maher*, 714 F.2d at 455.

Finally, the fact that no shareholders have filed objections to the settlement "weighs heavily in favor of approval of the derivative litigation settlement."  *In re Davita Healthcare Partners, Inc.*, 2015 WL 3582265, at *3; *see also Mohammed v. Ells*, No. 12-cv-01831-WJM-MEH, 2014 WL 4212687, at *4 (D. Colo. Aug. 26, 2014).

Based on all of these considerations, the Court will approve the Parties' settlement.

## II. Motion for Attorney's Fees

The Court must also determine whether the requested fee award is reasonable. The Parties state that they have agreed that Lightning will pay a total of $500,000 in attorney's fees, reimbursement of expenses, and service awards, subject to the Court's approval. [Doc. 55 at 3]. This amount will not be taken from the $1,850,000 payment to be paid to Lightning, as that payment will be paid by insurance companies. [*Id.* at 6]. The Parties also contemplate a $1,500 service fee award to Ms. Lanham; the *Uvaydov* plaintiff; and the *Bhavsar* plaintiff. [*Id.* at 15]; [Doc. 58 at 11:9–11].

### A. Attorney's Fees and Expenses

"Two methods exist for determining attorneys' fee awards in common-fund class action cases." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir. 2023). One is the percentage-of-the fund method, which awards class counsel a share of the benefit achieved for the class. The other is the lodestar method." *Id.* (citation omitted).[4] The Tenth Circuit has utilized both methods, but has expressed a "preference for the percentage-of-the-fund approach." *Id.* (quotation omitted). The Court thus proceeds using this approach.

Courts in the Tenth Circuit consider a number of factors to determine the appropriate percentage for a fee award, often referred to as the "*Johnson* factors":

> the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the "undesirability" of the case, the nature and

---

[4] The "lodestar method" is calculated by multiplying the reasonable number of hours spent by a reasonably hourly rate. *Voulgaris*, 60 F.4th at 1265 n.3.

10

length of the professional relationship with the client, and awards in similar cases.

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017).

Considering these factors, the Court finds that the proposed fee of $500,000 is reasonable. The proposed fee is 27% of the monetary payment to Lightning, [Doc. 55 at 6 n.5], which is "within the range of fee percentages awarded in securities class actions and other comparable complex class actions in this Circuit," *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 WL 6331178, at *12 (D. Colo. Dec. 3, 2021), *aff'd*, 60 F.4th 1259 (10th Cir. 2023). Plaintiffs' counsel represent that they have spent an aggregate of 421.44 hours on this case and the *Uvaydov* action and have explained in detail their efforts expended. [Doc. 55 at 7; Doc. 55-1 at ¶ 15; Doc. 55-4 at ¶ 14; Doc. 55-5 at ¶ 14]. Furthermore, "[c]ourts have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving," *Voulgaris*, 2021 WL 6331178, at *13, and the Court finds that the fee is reasonable in light of the time and labor required, the novelty and difficulty of the questions presented in this case, and the skill required to represent the class appropriately. And the result obtained, particularly in light of the risks of securities litigation, is a favorable one.

The Court does note that the $500,000 fee award exceeds the lodestar amount of $384,543.00, which represents a multiplier of approximately 1.29. [Doc. 55 at 8]. However, the Court does not find that this renders the requested fee award unreasonable. "Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed." *Vaszlavik v. Storage Corp.*, No. 95-cv-02525-LTB, 2000 WL 1268824, at *3 (D. Colo. Mar.

9, 2000). Courts in this District have approved fee awards with multipliers around or greater than the 1.29 multiplier in this case. *See, e.g.*, *Voulgaris*, 2021 WL 6331178, at *12 (approving 2.8 multiplier); *cf. Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (in a class action case, finding that a 1.37 multiplier was "significant lower than lodestar multipliers" that other Colorado courts had approved); *Lucken Fam. Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *3–4 (D. Colo. Dec. 22, 2010) (applying 1.82 lodestar multiplier in class action case). Accordingly, the Court approves the $500,000 award of fees and expenses.

B.   **Service Awards**

Plaintiff also requests that the Court grant $1,500 service awards to Ms. Lanham; the *Uvaydov* plaintiff; and the *Bhavsar* plaintiff. The Court previously expressed hesitance to approve a service award to a party not appearing before it. *See* [Doc. 49 at 15 n.7]. Plaintiff responds that the service awards are "collateral to the merits of this Action and, therefore, may be properly granted by the Court" and has directed the Court to a number of cases in which a court granted a service award to a non-party. *See* [Doc. 55 at 15, 16 n.11; Doc. 55-7 at 9; Doc. 55-8 at 8]; *see also Emps. Ret. Sys. of the City of St. Louis v. Jones*, No. 2:20-cv-04813-ALM-KAJ, 2022 WL 14160253, at *10 (S.D. Ohio Aug. 23, 2022) (awarding service fee awards to state court plaintiffs), *aff'd*, 2024 WL 659984 (6th Cir. Feb. 16, 2024), *and aff'd*, No. 23-3512, 2024 WL 659984 (6th Cir. Feb. 16, 2024). In addition, at the final fairness hearing, Plaintiff's counsel represented to the Court that this "is a routine practice," [Doc. 58 at 9:13–19], and as an officer of the Court, the Court accepts counsel's representation as true. *See Holloway v. Arkansas*, 435 U.S. 475, 486

(1978) ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (quotation omitted)).  Furthermore, the Court notes that the service fee awards are to be taken from the $500,000 award of fees and expenses.  [Doc. 55 at 15].  Accordingly, the Court will approve the $1,500 service awards to Ms. Lanham; the *Uvaydov* plaintiff and the *Bhavsar* plaintiff.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) Plaintiff's Unopposed Motion for Final Approval of Derivative Settlement [Doc. 54] is **GRANTED**;

(2) The Settlement Agreement [Doc. 45-2] is **APPROVED**;

(3) The Motion for the Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards [Doc. 55] is **GRANTED**;

(4) Plaintiffs' counsel are awarded $500,000 in attorney's fees and expenses, from which $1,500 service awards shall be paid to Ms. Lanham; the *Uvaydov* plaintiff; and the *Bhavsar* plaintiff; and

(5) The Court will retain jurisdiction over this matter for the limited purpose of enforcing the Settlement Agreement.

DATED:  April 22, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge